### IN THE

# SUPREME COURT OF TENNESSEE

#### FOR THE

## MIDDLE DIVISION.

(*Nashville.* December Term, 1922.)

J. M. RUDOLPH *et al. v.* D. T. FOUST *et al.*[*]

F. E. FOUST *et al. v.* J. M. RUDOLPH *et al.*

1. **RELIGIOUS SOCITIES.** After invalid attempted union of society with another, those adhering to original faith entitled to property.

   Where an attempted union of a religious society with another is invalid because of congregational division, those adhering to the original faith are entitled to possession of the society's property. (*Post, pp.* 371-373.)

   Case cited and approved: Bonham v. Harris, 125 Tenn., 452.

   Code cited and construed: Secs. 2563, 2564 (S.).

2. **JUDGMENT.** Former decisions between particular societies controlling in subsequent litigation.

   In litigation between church organizations, former decisions determining the ownership of property are conclusive and final. (*Post, pp.* 373, 374.)

   Cases cited and approved: Landrith v. Hudgins, 121 Tenn., 556; Bonham v. Harris, 125 Tenn., 452.

3. **RELIGIOUS SOCIETIES.** Not liable for rent for property improperly used.

---

[*]On question of property rights of local church on withdrawal from general body see notes 32 L. R. A., 93 and 8 A. L. R., 105.

On right to preliminary injunction which would have the effect of transferring possession of property from one faction to another see note 39 L. R. A. (N. S.), 33.

Rudolph v. Foust.

Where a church, after an attempted union with another church, used the property of such other church for the promotion of spiritual welfare of the community and advancement of the cause of Christianity during pendency of a suit to determine its ownership, in which property was subsequently adjudged to belong to a faction not in possession, it was not liable for rent. (*Post, p.* 374.)

FROM MONTGOMERY.

Appeal from the Chancery Court of Montgomery County. —Hon. J. W. STOUT, Chancellor.

JOHN H. DEWITT and AUSTIN PEAY, for appellants.

H. N. LEECH, for appellees.

MR. JUSTICE BACHMAN delivered the opinion of the Court.

These consolidated cases coming from the chancery court of Montgomery county involve the ownership and possession of church property known as Bethel Church and the parsonage appurtenant thereto, at Sango, near Clarksville, Tenn. In the one case the complainants, representing the Presbyterian Church of the United States of America, seek possession of the church property, and in the other the complainants, representing the Cumberland Presbyterian Church, seek possession of the parsonage. The question in both cases is the same, namely, whether, under the facts presented, and with regard to the decisions of this court touching the attempted reunion and union of the two denominations in 1906, the Presbyterian Church

of the United States of America is entitled to the church property involved, or whether the same is retained by the Cumberland Presbyterian Church, in whose ownership and possession it was vested prior thereto.

The record is voluminous, and many witnesses testify in support of the respective contentions of the parties; the testimony is conflicting, and we think an extended review of the same here would be impractical, affording merely a comparison of statements relative to the activities and allegiances of various members of the Bethel congregation subsequent to the announcement of union in 1906. It is sufficient to say that our examination of the record fails to disclose either the necessary consent of the members of the Bethel Church to the actions of the governing bodies of the two churches declaring a reunion and union, or continued acquiescence in the announced result justifying the finding that the Presbyterian Church of the United States of America, by reason of the action taken on May 23, 1906, succeeded to the ownership or was entitled to the possession of the property in question. While it is shown in the evidence that a majority of the members of the Bethel congregation favored the union of the two denominations, certain of the elders and members of the congregation were opposed thereto, and sought to maintain their allegiance the Cumberland Presbyterian Church. The concertive activities of those adhering to the Cumberland Church, though perhaps feeble, immediately following the pronouncement of union, nevertheless existed and progressed until complete denominational organization was effected. It is true that no demands were made or proceedings instituted by the minority for the purpose of obtaining pos-

session of the church property until after the decisions of this court determining the validity of the agreement upon the question of union, but it is apparent that inaction in this regard was occasioned by reason of the pendency of such suits, and a determination to await the results therein. As evidence of this, and further sustaining the insistence of those of the Bethel congregation adhering to the Cumberland Presbyterian Church that there had been no acquiescence in the control of the church property by the Presbyterian Church of the United States of America, immediately following the decision in *Bonham* v. *Harris,* 125 Tenn., 452, 145 S. W., 169, in February, 1912, demand was made for the possession of the property, and the same was complied with, as shown by the following letter to Mr. H. N. Leech, counsel for those representing the Cumberland Presbyterian Church.

"H. N. Leech—Sir: At a called meeting held on the 11th inst., by the Session at Bethel, I am authorized (as clerk) to notify you that they are ready to abandon the church at once, and you can have possession at your pleasure.

"Respectfully,          A. G. MILLER, Clerk.

"By order of the Session."

It is contended on behalf of the Presbyterian Church of the United States of America that the session had no authority to deliver possession of the property to the opposing faction, and authorities are cited to the effect that elders or ecclesiastical governors of the churches have no interest in church property which they may dispose of by sale or transfer; action by the members of the congregation being necessary to a valid disposition.

Sections 2563 and 2564 of Shannon's Code, declaring how title to lands acquired by religious denominations or societies shall be vested and disposed of, are also called to our attention. Neither the authorities nor the sections of the Code to which we have been referred are applicable to the case here, as no divestiture of title to church property or sale of the same was undertaken or involved, the action taken being merely one in recognition of and submission to the decisions of the court that, the attempted union being invalid, where congregational division existed, those adhering to the original faith were entitled to possession.

We are asked to reconsider and overrule the former decisions of this court in the cases of *Landrith* v. *Hudgins,* 121 Tenn., 556, 120 S. W., 783, and *Bonham* v. *Harris,* 125 Tenn., 452, 145 S. W., 169. While fully aware that these decisions stand alone upon the question of the validity of the union of these two great branches of the Presbyterian Church, and clearly cognizant of the rule of conclusiveness maintained by the courts of other jurisdictions, and so forcibly presented in the argument and brief of counsel, nevertheless we are mindful that these appeals involve property rights adjudicated by the principle announced in the decisions referred to. Without commitment to the principle of these decisions as affecting future questions of denominational unity or union, but because of the fixation of rights of property made thereunder and the length of time in which the respective parties have abided thereby, we must hold that, in litigation between these particular church organizations, the decisions heretofore announced are conclusive and final. Any other course could but have

Rudolph v. Foust.

the effect of disturbing adjustments long since made, and the agitation anew of factional controversies now fortunately ended.

The successful parties herein make claim for rent for that period during which they were deprived of the use of the church property. It is to be presumed that the property during this time was devoted by those in possession to the laudable promotion of the spiritual welfare of the community and the advancement of the cause of Christianity; we do not feel, therefore, that in good conscience they should be called upon to render in accordance with the admonition as to those things "which are Caesar's."

The demand will not be allowed, and the decree of the chancellor is in all things affirmed.